UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

---------------------------------------------------------------------x

MATTHEW SAHM,

                Plaintiff,

v.

MIAMI UNIVERSITY

                Defendant

---------------------------------------------------------------------x

:     Civil Action No.: **1:14CV698**

:     J. DLOTT

:     **COMPLAINT**

:

:     **JURY TRIAL DEMANDED**

:

        Plaintiff Matthew Sahm (herein after "Sahm"), by and through his attorneys, Bradley Fox and Richard C. Vande Ryt, states for his Complaint against Miami University (herein after "Miami"), and alleges as follows:

### NATURE OF THIS ACTION

1. By this action, Sahm seeks to recover damages for, inter alia, Miami's breach of contract arising out of Miami's failure to follow its own policies and procedures regarding student disciplinary actions and its wanton failure to abide by the duty and obligation to adhere to such policies and procedures in a good faith, professional and regular unbiased manner.

2. Sahm is a former student of Miami, having been terminated during the fall 2013 semester.

3. On or about September 1, 2013, Sahm was falsely accused of a sexual assault by Alexis Prenzler (herein after "Prenzler"), another student at Miami. The Miami Office of Ethics and Student Conflict Resolution, charged with the responsibility of adjudicating the allegations against Sahm, failed to follow Miami's policies for disciplinary proceedings, conducted a fundamentally unfair and prejudicial hearing, failed to provide Sahm with

1

exculpatory information, failed to consider overwhelming evidence in support of Sahm in denying his administrative appeals, and defamed Sahm by placing in his permanent educational record the Disciplinary Board's finding proclaiming him guilty of sexual assault that will be viewed by any future educational institution to which he applies.

4.  Sahm is entitled to have the Disciplinary Board's decision vacated and is entitled to actual and punitive damages as a result of Miami's false, malicious, and injurious actions and statements.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over Sahm's claims pursuant to 28 U.S.C.§ 1332(a)(1).

6.  The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7.  Sahm is a citizen of the Commonwealth of Virginia.

8.  Miami is a public university located in Oxford, Ohio.

9.  This Court has personal jurisdiction over Miami pursuant to Rule 4(c) of the Federal Rules of Civil Procedure and Ohio Rev. Code Ann. 2307.382(A)(3).

10. Miami, inter alia, transacts business in Ohio and caused a tortuous injury by an act that occurred in Ohio.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

## BACKGROUND

12. Sahm grew up and lives in Great Falls, Virginia.

13. Sahm came to Miami in the fall of 2012 to attend the university as a student.

14. In August 2013, Sahm returned to Miami for his second year of education.

### *False Allegations Made Against Sahm*

15. In the late night hours of August 31, 2013, Sahm engaged in consensual sex with Prenzler, another second year Miami student. The sex occurred after both met at a gathering before a party in one of the campus fraternity houses and after both had consumed alcohol while being underage.

16. During the night, a large group of individuals, including many Miami students, gathered at the Kappa Alpha house to socialize and drink alcohol. No one was forced to consume alcohol and all participated willingly, as did Sahm and Prenzler.

17. Prenzler and a group of her friends, including D.M. and G.W., went to the party at the Kappa Alpha house where they willingly consumed alcohol in an unknown amount. Prenzler was not old enough to legally consume alcohol at the time yet brought her own alcohol to drink while at the gathering.

18. Sahm had consumed some alcohol earlier in the day but also consumed alcohol at the Kappa Alpha house willingly. Sahm, at the time, was not old enough to legally consume alcohol.

19. During the night, Sahm and Prenzler began talking with a group of mutual friends. Sahm, D.M. and Prenzler, along with others, made their way to a second floor room at the Kappa Alpha house where they played a drinking game.

20. At some point, Prenzler began talking with Sahm and eventually, at her request, accompanied Sahm back to his room located in the Kappa Alpha house.

21. Sahm and Prenzler began kissing as initiated by Prenzler which led to them both engaging in consensual sexual intercourse.

22. Sometime during the consensual sexual intercourse Prenzler wanted to stop to which Sahm immediately complied.  Prenzler began to cry while sitting with Sahm in the room. Prenzler disclosed to Sahm that she had a boyfriend.  Prenzler then texted her friend, J.W., about cheating on her boyfriend.  No further sexual acts occurred between Sahm and Prenzler

23. Following the intercourse, Sahm and one of Prenzler's female friends helped Prenzler pick up her belongings.  Prenzler exited the Kappa Alpha house where she met with her friends, D.M. and G.W., who took a taxi with Prenzler back to their sorority house.

24. At the sorority house, Prenzler cried to her friends, including K.W., E.C., J.W., D.M., and G.W. about how she had just cheated on her boyfriend. A.P. also made multiple statements to them that she wasn't that drunk.

25. On September 1, 2013 Prenzler changed her story from having cheated on her boyfriend to that of being raped by Sahm since she was under the influence of alcohol and could not consent.

26. Prenzler then went with her friend S.T. to the hospital where a full sexual abuse examination was conducted.

27. After the hospital, Prenzler went to the Oxford Police Department where she filed an incident report stating she was "sexually assault in a fraternity house by an unknown male."

28. On September 6, 2013, Sahm was informed, via letter, by Miami that he was being accused of sexually assaulting Prenzler in violation of the Miami Student Handbook.

*Miami's Student Handbook and Procedures*

29. The Miami Student Handbook (herein after "Handbook") sets forth Miami's policies and procedures for the Disciplinary Board's adjudication of charges alleging violation of the Handbook and the sanctions to be imposed upon the student. The Disciplinary Board hears cases of sexual assault, rape, and sexual violence.

30. The University President is authorized under the Handbook, section 2.3D.2, to appoint the Disciplinary Board students members who are nominated by the Associated Student Government. The Disciplinary Board is empowered to determine whether a violation of Miami's policies has occurred, those include allegations of sexual assault.

31. The Disciplinary Board is comprised of ten faculty members, eight undergraduate students who "are juniors or seniors," and two graduate students. A Quorum for disciplinary hearings consists of at least three faculty members and two students. The handbook does not state whether or not the Disciplinary Board members are required to be trained or experienced in adjudicating such matters, or to be free from prejudice and bias.

32. The Handbook states that Miami "must uphold and abide by University policies and procedures protecting individual rights and guiding democratic engagement." As such, the Handbook sets forth disciplinary hearing policies and procedural requirements, including but not limited to:

   a. The "Standard of evidence used to determine responsibility is a 'preponderance' of evidence," meaning "The evidence that has the most convincing force, the greater weight of credible evidence":

b. The "standard of evidence essentially asks, 'is it more likely than not that our policy was violated";

c. The Disciplinary Board "consider[s] all the testimony presented at the hearing (including the incident report, statements from the accused and the victim, and statements from witnesses)";

d. The parties are entitled to bring legal counsel to act as an advisor during the hearing subject to the "constraints imposed by the Disciplinary Board;"

e. The chair of the Disciplinary Board "shall have the right to determine the acceptability of testimony and other evidence during the hearing and may place time limitations on testimony and on closing arguments;"

f. The Disciplinary Board can elect to "accept a witness's written statement in lieu of live testimony;"

g. The "Disciplinary Board has the right to control all questioning of witnesses and may require that all questions be conducted by the Board."

### *Miami's Investigation of the Sexual Assault Allegations*

33. On or about September 5, 2013, Prenzler emailed Susan Vaughn, an employee of Miami, stating her desire to file a complaint against Sahm and asking the University to conduct their own investigation of the matter.

34. On or about September 6, 2013, Miami issued a "Notice of Alleged Violation" to Sahm from the Associate Director Chris Taylor, from the Office of Ethics and Student Conflict Resolution.  The Notice informed Sahm of the allegations made by Prenzler and that the incident is an alleged violation of Handbook section 103SA.  The Notice also provided Sahm with information regarding the scheduled Procedural Review.

35. Miami's Procedural Review consists of the accused (Sahm in this case) meeting with a Miami staff member to review the charges, sanctions, and the disciplinary process. Failure to appear for the Procedural Review may result in the accused being "deemed to have committed the violation."

36. Sahm attended the Procedural Review, without counsel, at which time he elected to have the matter heard by the Disciplinary Board.

37. Miami had a Title IX investigator, Ms. Tobergate, investigate the allegations.

38. Tobergate interviewed Sahm regarding his side of the story. Tobergate did not disclose to Sahm that she also works for Miami as a part time campus police officer. Tobergate did not advise Sahm of his Miranda rights.

*The Disciplinary Board's Fundamentally Unfair Hearing*

39. On or about September 26, 2013, the Disciplinary Board held a hearing regarding the allegations against Sahm.

40. The Handbook does not state who has the burden of proof by a preponderance of the evidence, the standard of proof required by the Handbook.

41. It was never stated during the hearing whether Sahm or the complainant, Prenzler, had the burden of proof; therefore, the Disciplinary Board impermissibly placed the burden on Sahm to prove his innocence.

42. The Disciplinary Board further permitted testimony based upon opinions of the Title IX investigator not based upon facts, evidence, or examination results. Such evidence that was never disclosed to Sahm prior to the hearing and which was not admissible in any legal setting.

43. The Disciplinary Board further permitted opinion, not scientific, evidence of Prenzler's alcohol levels at the alleged time of the sexual assault.

44. The Disciplinary Board did not allow or offer any opinion evidence as to Sahm's level of intoxication at the time of the alleged sexual assault.

45. The Disciplinary Board required Sahm to offer proof that his sexual intercourse with Prenzler was consensual.

46. The members of the Disciplinary Board received no or woefully inadequate training to handle such matters.

47. For example, no member of the Disciplinary Board was trained to understand or interpret a sexual assault evidence collection kit, blood alcohol levels, or what constitutes consensual sexual intercourse.

48. Sahm did not have an advisor and did not realize the need for legal counsel until following the Disciplinary Boards decision.  Sahm was of the understanding he just needed to present his side of the story.  Sahm was discouraged by Miami staff from retaining counsel since he was informed they were not permitted to participate in the hearing.

49. During the hearing, Sahm truthfully testified that: 1) the sexual intercourse with Prenzler was consensual; 2) Prenzler never said "no" at any point during the encounter; 3) that when Prenzler wanted to stop Sahm complied and immediately stopped; 4) Sahm was intoxicated at an unknown level during the evening in question; 5) Sahm was unaware of whether Prenzler was intoxicated but believed her not to be.

50. The Disciplinary Board did not allow fully cross-examination or confrontation of the accusers to properly vet the evidence and never disclosed to Sahm what evidence of Prenzler's intoxication would be admitted.

51. No member of the Disciplinary Board was trained to understand the evidence that would show that rape or any type of sexual assault had occurred or had not occurred. The Disciplinary Board failed to call any trained expert witnesses who could have interpreted the results of the medical examination and would have informed the Disciplinary Board that no rape or sexual assault had occurred.

52. The Disciplinary Board found that Sahm had committed violations of the Handbook in the form of rape and sexual assault. The Disciplinary Board imposed dismissal of Sahm as a student from Miami.

53. On or about October 4, 2013, Sahm retained counsel and filed a written appeal of the decision issued by the Disciplinary Board.

54. The Handbook allows for appeals to be filed for the following:

    a. Inappropriate Sanction;

    b. Procedural defect in the adjudication of the case.

    c. New evidence.

55. The Miami Appeals Board shall be "composed of five faculty, three undergraduate students, and one graduate student, all of whom shall be appointed by the President."

56. The Appeals Board meets in closed session. The Appeals Board shall find the appeal to have merit or not have merit by majority vote. There is no standard of evidence or proof required to establish what "having merit" means in the Handbook.

57. If the Appeals Board finds the sanction is inappropriate, they can raise or lower the sanction.

58. If the Appeals Board finds new evidence exists or there was a procedural defect in the adjudication of the case, then they must find it sufficiently substantial as to affect the outcome.  There is no definition as to what "sufficiently substantial" means.

59. The Handbook states the Appeals Board will render a decision within 10 days of receipt of the Appeal.

60. On or about October 18, 2013 the Appeals Board denied, in writing, Sahm's appeal after what they state was consideration of Sahm's materials presented to them and A.P.'s response.  The Appeals Board stated: "1) No new evidence was presented; 2) There was no procedural defect in the adjudication of the case, and 3) The sanction imposed was appropriate."

61. In the Appeals Board decision they further stated that Sahm was dismissed immediately from Miami.

62. The Appeals Board failed to consider the Disciplinary Board denied Sahm the elements of a fair hearing, procedures in allowing witnesses to testify or be subject to cross examination were denied, the procedures of allowing opinion evidence to establish scientific examination type evidence were not followed, the Disciplinary Board's finding was not supported by the evidence, Sahm presented significant new evidence effecting the character and statements of Prenzler, Sahm presented new evidence effecting the issue of intoxication on the part of Prenzler and consent on the part of Prenzler, and the sanctions imposed against Sahm were arbitrary and capricious.

63. On or about October 23, 2013, Sahm filed for Vice Presidential Review (herein after "Review") with Dr. Scott Walter, of the Disciplinary Board's decision.

64. Reviews are similar as appeals in that they can be filed for: 1) inappropriate sanction, 2) new evidence, or 3) there were procedural defects in the disciplinary hearing.

65. In his Review, Sahm pointed out the same significant issues he previously presented in the Appeal.

66. On or about November 1, 2013, Dr. Walter issued a letter to Sahm stating that he concurred with the Appeals Board and that "nothing you submitted was substantial enough to have changed the final outcome of the original hearing."

*Oxford Police Department Investigation*

67. On September 1, 2013, Prenzler filed an Incident Report with the Oxford Police Department alleging that "an unknown male" had sexually assaulted her.

68. The Oxford Police Department then opened an investigation into the criminal allegations.

69. Sahm voluntarily met with and was interviewed by a detective from the Oxford Police Department, without the presence of counsel.

70. Sahm told the Oxford Police Department his side of the story.

*Sahm's Private Investigator*

71. Following the Disciplinary Board's decision, on September 30, 2013, Sahm retained counsel to address the Appeal and to represent him regarding the potential criminal liability he could have faced based upon the rape allegations. Counsel for Sahm hired a private investigator (hereinafter "PI") to conduct an independent investigation of the

allegations, witnesses, and evidence that had been presented or was not yet known to exist.

72. The PI began investigating possible witnesses to the alleged incident, Sahm's friends and housemates, as well as Prenzler's sorority sisters and roommates.

73. PI obtained written and recorded statements and affidavits from: A.T., E.C., K.W., J.W., D.S., and D.B., all who are sorority sisters with Prenzler or fraternity members with Sahm.

74. The witnesses stated they had contact with Prenzler and Sahm on the night of August 31, 2013 and were witnesses to part of their interaction and to statements made by each following the incident.

75. A.T. reported to PI that she was interviewed by Tobergate and was discouraged from testifying at the Disciplinary hearing. A.T. reported Tobergate told her to "Google" facts and stats on campus sexual assaults. A.T. disclosed that Prenzler had a meeting with her sorority sisters regarding what they needed to say at the Disciplinary Hearing.

76. A.T. further reported that D.M. told her Prenzler "wanted it." D.M. was with Prenzler in the taxi home and at the sorority house.

77. D.B. told PI that he saw Prenzler leave the fraternity house on August 31, 2013, and she only complained of cheating on her boyfriend and she did not appear intoxicated.

78. D.S. told PI he saw Prenzler and she complained of cheating, not being sexually assaulted.

79. J.W. told PI she emailed Miami employee Susan Vaughn about the incident with Prenzler but she was not called to testify and Sahm was not aware of her involvement until after

the hearing. J.W. told investigator she received a text message from Prenzler about cheating on her boyfriend.

80. K.W. told PI she was contacted by J.W. to meet Prenzler with the cab at the sorority house. K.W. told PI how Prenzler repeatedly complained of cheating on her boyfriend not once saying she was sexually assaulted. K.W. further stated that Prenzler said she wasn't drunk. K.W. was told by D.M. that Prenzler "wanted it." K.W. contacted Sahm to notify him of her disbelief about the Disciplinary Board's findings and to offer her information.

81. PI and counsel for Sahm presented their findings, witness statements, affidavits, and evidence to the Oxford Police Department with full disclosure.

82. Sahm's counsel and PI spoke with the Oxford Police Department regarding the police investigation and further spoke with the Oxford Police Department regarding the potential filing of criminal charges for the alleged incident from August 31, 2013 reported by Prenzler.

### No Criminal Charges Filed

83. On Oct. 3, 2013 the Oxford Police Department, by and through the Butler County Prosecutor's Office, subpoenaed to the Grand Jury, Miami to produce records regarding the allegations made by Prenzler and the records of the entire proceedings.

84. Based upon information available to the Oxford Police Department through their own investigation, the information provided by PI, and the records provided by Miami; the criminal allegations were not presented to the Grand Jury by the Butler County Prosecutor's Office and no formal charges or indictment against Sahm were issued.

85. No probable cause existed to arrest Sahm, and no probable cause existed to criminally charge Sahm for the allegations made by Prenzler.

### *Sahm Leaves Miami and Moves Back to Virginia*

86. Sahm was terminated from being a student at Miami and informed he was not permitted upon any property of Miami.

87. Sahm moved back to Virginia in late September, 2013 to be with his family.

88. During the Winter of 2013, Sahm enrolled in Virginia Community College System (VCCS) that manages Community Colleges throughout Virginia. Sahm did this to continue his higher education.

89. Upon enrolling, Sahm's student transcripts and records were reviewed by VCCS. Sahm was embarrassingly required to explain to the potential new school what had occurred.

90. Sahm was accepted and started classes at VCCS.

91. In the Spring of 2014, Sahm applied to Allegheny College in order to continue his higher education at a larger and better school, that being a four year university.

92. Sahm has been asked by Allegheny to provide a statement regarding the allegations and the finding of the Disciplinary Board from Miami. The records of the allegations, the Disciplinary Board decision, and Sahm's student transcripts were sent in order that they could weigh his acceptance. Miami forwarded Sahm's transcripts and student record to Allegheny.

93. On or about July 15, 2014, Allegheny requested a letter of explanation from Sahm regarding the discipline at Miami. Counsel for Sahm provided Allegheny with the information requested.

94. On or about July 19, 2014, Sahm received a letter of rejection from Allegheny. Sahm was previously accepted into Allegheny upon graduating high school but chose Miami. Sahm's GPA from Miami was over a 3.0, and he received a 4.0 during his time at VCCS.

14

Other than the discipline record, there is no reason Allegheny should not have accepted Sahm now.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Breach of Contract)

95. Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 95, as if fully set forth herein.

96. The Handbook is a valid, binding, and enforceable contract between Miami and Sahm.

97. The Handbook is and was supported by valid consideration.

98. Sahm fully complied with all of his obligations under the Handbook.

99. Miami breached its obligations under the Handbook by, inter alia, conducting a fundamentally unfair hearing, improperly placing the burden of proof on Sahm, failing to involve in the hearing competent to testify about the Sexual Abuse kits findings, failing to have Disciplinary Board members with no training or experience who were unprepared to adjudicate a sexual assault allegation, failing to involve in the hearing the character witnesses of Sahm, failing to involve in the hearing or provide to Sahm exculpatory evidence, rushed to final judgment of Sahm before receiving the full results of the Sexual Abuse kit and the Oxford Police Department investigation, willfully ignored new and exculpatory evidence presented on Appeal and Review by Sahm, failed to acknowledge the prejudicial nature of their disciplinary hearing procedures, failed to correct the finding of a violation on the part of Sahm, failed to recognize the exculpatory evidence presented to them of witnesses to contradicted the allegations, and failed to set aside an incorrect sanction.

100.     Sahm has incurred, and will continue to incur, significant damage as a direct

result of Miami's breaches of the Handbook in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

(Intentional Infliction of Emotional Distress)

101.     Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 100

as if fully set forth herein.

102.     Miami acted in a shockingly, outrageous and extreme manner by, inter alia,

conducting a flawed and prejudicial investigation, refusing to consider exculpatory

evidence, refusing to adhere to – or even consider – the information, guidance and

investigation of trained professionals in the Prosecutor's Office and local police

department who did not even find probable cause, and for holding a fundamentally unfair

and flawed hearing resulting in a decision that permanently damages Sahm.

103.     As a direct and proximate result of Miami's actions, Sahm has been publicly and

privately humiliated, felt ashamed, emotionally distraught and violated.  The conduct of

Miami demonstrated the intent to cause, or complete disregard of the substantial

probability of causing, Sahm severe emotional distress.

104.     Miami's actions were a direct and proximate cause of Sahm's severe emotional

distress.

105.     Sahm has incurred, and will continue to incur, significant damage as a direct

result of Miami's intentional acts to cause Sahm severe emotional distress.

## THIRD CLAIM FOR RELIEF

(Libel Per Se)

16

106.     Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 105 as if fully set forth herein.

107.     Miami's written decision records included in Sahm's student records and transcripts are false.

108.     Miami's written records regarding Sahm are not privileged and can be obtained by other universities in which he applies.

109.     Miami's written decision records were made with reckless disregard of its truth or falsity and/or with malice

110.     Miami's written decision records are libelous per se because it imported a charge of an indictable offense involving moral turpitude and injured Sahm's personal reputation.

111.     Miami's written decision records forever falsely taints and permanently damages Sahm as a student who was expelled from his university for a rape and sexual assault that did not occur.  Sahm has worked his entire life to develop his personal standing and obtain a higher education.

112.     Miami's written decision records permanently damage Sahm's personal reputation in Ohio, Pennsylvania and Virginia.

## FOURTH CLAIM FOR RELIEF

(Libel – Reckless Disregard/Malice)

113.     Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 112 as if fully set forth herein.

114.     Miami's written decision statements and records concerning Sahm was false

115.    Miami's written decision statements and records are not privileged and will be available to any future school Sahm applies to and have already been published to two schools.

116.    Miami's written decision statements and records are made a permanent part of Sahm's educational record that will follow him through higher education, graduate schools, and employment.

117.    Miami's written decision statements and records were made with reckless disregard for its truth or falsity and/or with malice.

118.    Miami's written decision statements and records and conduct have caused Sahm to suffer severe emotional distress.

119.    Miami had no reasonable grounds for believing the truth of its statements and records.  Miami, at best, relied upon hearsay, circumstantial evidence, lies, improper and biased forensic evidence or explanation, improper evaluation and explanation of the evidence.

120.    Miami failed and refused to consider exculpatory evidence.

121.    Miami's statements and records forever falsely taints and permanently damages Sahm as a student who was expelled from his university for a rape and sexual assault that did not occur.

122.    Miami's statements and records permanently damages Sahm's reputation in Ohio, Pennsylvania and Virginia.

## FIFTH CLAIM FOR RELIEF

(Libel Per Quod)

123. Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 122 as if fully set forth herein.

124. Miami's statements and records concerned Sahm and indicated the existence of other facts which are defamatory.

125. Miami's statements and records are not privileged and are published to all future schools in which Sahm may apply.

126. Miami's statements and records were made with reckless disregard of their truth or falsity and/or with malice.

127. Miami's statements and records were libelous per quod because they were not reasonably subject to an innocent interpretation and consisted of words that reasonably created a false implication.

128. Miami's statements and records forever falsely taints and permanently damages Sahm's as a student who was expelled from his university for a rape and sexual assault that did not occur.

129. Sahm suffered special damages because Miami's statement and records forced Sahm to expend substantial funds to apply at other universities and eventually move to Virginia.

### SIXTH CLAIM FOR RELIEF

(Vacatur of the Disciplinary Decision- Arbiter's Partiality)

130. Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 129 as if fully set forth herein.

131.     Pursuant to the Ohio Arbitration Act ("OAA"), Ohio Rev. Code Ann §

2711.10(B), and 9 U.S.C. § 10(a)(2), the Court is empowered to vacate an arbitration

decision when "there was evident partiality…on the part of the arbiters."

132.     The Decision issued by the arbiters, Disciplinary Board, should be vacated

because the Disciplinary Board improperly placed the burden on Sahm to prove that the

sexual assault/rape did not occur, failed to involve in the hearing someone competent and

qualified to interpret or clarify the sexual assault examination kit findings, failed to

involve in the hearing someone competent and qualified to discuss blood alcohol levels

and intoxication, failing to have Disciplinary Board members with no training or

experience who were unprepared to adjudicate a sexual assault allegation, failing to

involve in the hearing the character witnesses of Sahm, failing to involve in the hearing

or provide to Sahm exculpatory evidence, rushed to final judgment of Sahm before

receiving the full results of the Sexual Assault examination kit and the Oxford Police

Department investigation, willfully ignored new and exculpatory evidence presented on

Appeal and Review, failed to acknowledge the prejudicial nature of their disciplinary

hearing procedures, failed to correct the finding of a violation on the part of Sahm, failed

to recognize the exculpatory evidence presented to them of witnesses to contradicted the

allegations, and failed to set aside an incorrect sanction.

133.     The Disciplinary Board's misconduct prejudiced Sahm by resulting in a

fundamentally unfair hearing, a decision finding Sahm responsible for a rape and sexual

assault that did not ocurr and an unjustified expulsion.

### SEVENTH CLAIM FOR RELIEF

(Vacatur of the Disciplinary Decision – Arbitrator's Misconduct)

134.     Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 133

as if fully set forth herein.

135.     Pursuant to the OAA, Ohio Rev. Code Ann § 2711.10(C), and 9 U.S.C. §

10(a)(3), the Court is empowered to vacate an arbitration decision when "the arbitrator'

were guilty of misconduct…in refusing to hear evidence pertinent and material to the

controversy; or of any other misbehavior by which the rights of any party have been

prejudiced."

136.     The Decision issued by the arbiters, Disciplinary Board, should be vacated

because the Disciplinary Board improperly placed the burden on Sahm to prove that the

sexual assault/rape did not occur, failed to involve in the hearing someone competent and

qualified to interpret or clarify the sexual abuse examination kit findings, failed to

involve in the hearing someone competent and qualified to discuss blood alcohol levels

and intoxication, failing to have Disciplinary Board members with no training or

experience who were unprepared to adjudicate a sexual assault allegation, failing to

involve in the hearing the character witnesses of Sahm, failing to involve in the hearing

or provide to Sahm exculpatory evidence, rushed to final judgment of Sahm before

receiving the full results of the Sexual Assault examination kit and the Oxford Police

Department investigation, willfully ignored new and exculpatory evidence presented on

Appeal and Review, failed to acknowledge the prejudicial nature of their disciplinary

hearing procedures, failed to correct the finding of a violation on the part of Sahm, failed

to recognize the exculpatory evidence presented to them of witnesses to contradicted the

allegations, and failed to set aside an incorrect sanction.

137.    The Disciplinary Board's misconduct prejudiced Sahm by resulting in a fundamentally unfair hearing, a Decision finding Sahm responsible for a rape and sexual assault that did not occur and an unjustified expulsion.

## EIGHTH CLAIM FOR RELIEF

### (Violation of Civil Rights – 42 U.S.C.§1983)

138.    Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 137 as if fully set forth herein.

139.    Miami has acted under color of law violating Sahm's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

140.    Miami has acted intentionally and with callous disregard for Sahm's clearly established Constitutional Rights.

141.    As a direct and proximate result of Miami's violations of Sahm's Constitutional rights, Sahm has suffered severe and substantial damages including: diminished earnings capacity, lost career and business opportunities, loss of educational opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional distress, and other compensatory damages, in an amount to be determined at trial.

142.    Pursuant to 42 U.S.C.§ 1983 Miami is liable for Sahm's damages.

143.    Pursuant to 42 U.S.C.§ 1988 Sahm is entitled to attorney's fees incurred in bringing this action.

## NINTH CLAIM FOR RELEIF

### (Violation of Title IX – Erroneous Outcome)

144.     Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 143 as if fully set forth herein.

145.     Pursuant to 10 U.S.C.§1681(a),§1687, Title IX prohibits discrimination on the basis of sex in a school's "education program or activity," which includes all of the school's operations.

146.     Miami receives federal financial assistance and funding and is therefore subject to Title IX.

147.     In virtually all cases of campus sexual misconduct, the accused student is a male and the accusing student is a female.

148.     Miami has created an environment in which Sahm, an accused male student, was fundamentally denied due process as to be virtually assured a finding of guilt of a violation of the Handbook.  Such a biased and one-sided process deprived Sahm, as a male student, of educational opportunities on the basis of sex.

149.     As a direct result of Miami's discriminatory practices, Sahm was denied a fundamentally fair hearing, the Disciplinary Board's decision reached was an erroneous outcome and Sahm has been damaged in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF

(Violation of Title IX – Deliberate Indifference and Sexual Discrimination)

150.     Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 149 as if fully set forth herein.

151.     Miami had actual notice of the irresponsible, improper and sexually-biased manner in which the allegations against Sahm were being investigated and adjudicated.

23

152.     Miami, despite having the authority to institute corrective measures to stop the misconduct and sexually-biased acts, was deliberately indifferent to the misconduct.

153.     Miami's deliberate indifference was motivated by Sahm's gender.  Sahm and Prenzler were both under the age to consume alcohol, and by Handbook standards, unable due to intoxication to consent to sexual activity.  Miami was sexually-biased in investigating and adjudicating Sahm as the perpetrator automatically because he is male, and treating Prenzler as a victim because she is female.  If Sahm had made the complaint instead of Prenzler, Miami would not have investigated and adjudicated Prenzler as they did Sahm.  Miami sanctioned, tolerated and endorsed the procedures and policies which effectively deprived Sahm, a male student accused of rape and sexual assault, of his right to a fair hearing.

154.     As a direct result of Miami's deliberate indifference, Sahm has been damaged in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF

### (Violation of Due Process Rights)

155.     Sahm restates and re-alleges the allegations set forth in paragraphs 1 through 154 as if fully set forth herein.

156.     Miami failed to afford Sahm his Due Process Rights in violation of the Fourteenth Amendment to the United States Constitution.

157.     Miami failed to allow Sahm the right to challenge the evidence presented against him, failed to turn over exculpatory evidence prior to the Disciplinary Hearing, failed to allow Sahm a fair opportunity to defend the allegations, failed to consider the new evidence presented by Sahm that exhonorated him from the allegations and ran contrary

24

to the evidence presented at the hearing, and failed to allow Sahm the opportunity to present the new and exculpatory evidence at a new hearing.

158.     The disciplinary review process established by Miami is inherently flawed and in violation of Sahm's rights and those similarly situated.

159.     Miami denied Sahm due process of law resulting in damages to Sahm to be determined at a trial of this matter.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Sahm seeks judgment as follows:

160.     Awarding Sahm compensatory damages for the injuries he has suffered, including consequential and incidental damages, as a result of Miami's wrongful conduct in an amount to be determined at trial;

161.     Awarding Sahm special damages in an amount to be determined at trial;

162.     Awarding Sahm punitive damages in a just amount for Miami's willful and wanton conduct;

163.     Awarding Sahm pre-judgment and post-judgment interest;

164.     Awarding Sahm his costs, expenses, and attorney's fees incurred in connection with this action;

165.     Vacatur of the original Decision issued by the Disciplinary Board;

166.     Vacatur of the Appeal and Review decisions upholding the Disciplinary Board decision;

167.     Awarding Sahm such other relief as this Court finds just and proper under law.

Dated: Cincinnati, Ohio
            July 2, 2014

Respectfully Submitted,
RICHARD C. VANDE RYT
By: _____
Richard C. Vande Ryt

114 East Eighth St., Ste 400
Cincinnati, OH 45202
*Attorneys for Plaintiff*

FOX & SCOTT, PLLC
By: *s/ Bradley Fox*_____
Bradley Fox, *pro hac vice forthcoming*
517 Madison Ave.
Covington, KY 41011
859-291-1000
brad@foxscottlaw.com
*Attorneys for Plaintiff*