UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MATTHEW SAHM, | : | Case No. 1:14-cv-698 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | **DEFENDANT MIAMI UNIVERSITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| | : | |
| MIAMI UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

Defendant Miami University ("the University") moves the Court to dismiss all claims alleged against it pursuant to Federal Rule of Civil Procedure 12. Plaintiff Matthew Sahm has failed to set forth facts or legal claims in his Complaint sufficient to state a claim upon which relief may be granted.

Respectfully submitted,

MICHAEL DEWINE, ATTORNEY GENERAL OF OHIO

By: /s/ Doreen Canton

Doreen Canton (0040394)
Evan T. Priestle (0089889)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Tel: 513.381.2838
Fax: 513.381.0205
canton@taftlaw.com
epriestle@taftlaw.com

Trial Attorneys for Defendant Miami University

Of Counsel:

Robin Parker (0010854)
General Counsel
Miami University
215 Roudebush Hall
Oxford, OH 45056

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MATTHEW SAHM, | : | Case No. 1:14-cv-698 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | **MEMORANDUM IN SUPPORT OF DEFENDANT MIAMI UNIVERSITY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| MIAMI UNIVERSITY, | : | |
| Defendant. | : | |

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), Defendant Miami University ("the University") moves to dismiss Plaintiff Matthew Sahm's claims. Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh claims for relief against the University must be dismissed under Eleventh Amendment immunity. Additionally, the undisputed material facts require that a number of Plaintiff's claims, including the Ninth and Tenth claims for relief, against the University be dismissed for failure to state a claim upon which relief may be granted.

## II. PROCEDURAL AND FACTUAL HISTORY

The situation at issue in Plaintiff's complaint began on September 1, 2013, when Plaintiff, then a student at the University, was accused of sexual assault by A.P.,[1] a fellow student at the University. (*See* Doc. 1 at ¶¶ 2-3) On September 5, 2013, A.P. notified Susan Vaughn, the Director of the Office of Ethics and Student Conflict Resolution, that she wanted to file a complaint against Plaintiff for sexual assault and requested that the

[1] Due to the sensitive nature of the issues at hand, the University will refer to this student by her initials.

University conduct an investigation. (*Id.* at 33). The following day, Chris Taylor, Associate Director of the Office of Ethics and Conflict Resolution, issued a "Notice of Alleged Violation" to the Plaintiff. (*Id.* at ¶ 34) That notice advised Plaintiff of A.P.'s allegation and informed Plaintiff about the next step in the disciplinary process. (*Id.*)

The next step in the disciplinary process, the Procedural Review, affords the accused the opportunity to meet with a University staff member to review the allegations, possible sanctions, and the disciplinary process. (*Id.* at ¶ 35) Plaintiff attended the Procedural Review and elected to have a hearing in front of the Disciplinary Board. (*Id.* at ¶ 36) The Disciplinary Board hearing was set for September 26, 2013. (*Id.* at ¶ 39) In the meantime, the University's Title IX investigator, Susan Tobergate, conducted an investigation of the allegations. (*Id.* at ¶ 37)

Plaintiff claims that the Disciplinary Board hearing was flawed because it allowed opinion testimony from the Title IX investigator (*id.* at ¶¶ 42-44); it placed the burden of proof on Plaintiff (*id.* at ¶¶ 41, 45); and the Board members had no training to handle such matters (*id.* at ¶¶ 46-47, 51). Plaintiff states that he did not have an advisor present with him and he did not realize the need for legal counsel until after the Disciplinary Board's decision. (*Id.* at ¶ 48) Plaintiff admits that he was able to testify at the hearing, but asserts that he was not able to fully cross-examine or confront accusers to properly vet the evidence. (*Id.* at ¶ 50)

Ultimately, the Disciplinary Board found that Plaintiff had violated Student Conduct Regulation 103SA and that dismissal was an appropriate sanction. (*Id.* at ¶ 52) On October 4, Plaintiff retained counsel and filed a written appeal to the Appeals Board. (*Id.* at ¶ 53) On October 18, 2013, the Appeals Board denied Plaintiff's appeal, finding

that Plaintiff had presented no new evidence, there was no procedural defect in the adjudication of the case, and the sanction imposed was appropriate. (*Id.* at ¶ 60) Plaintiff asserts that the Appeals Board failed to consider new evidence regarding A.P.'s character and new evidence affecting the issue of intoxication. (*Id.* at ¶ 62) Additionally, Plaintiff asserts that the Appeals Board failed to consider the alleged flaws in the Disciplinary Board's procedure. (*Id.*)

Plaintiff then filed for a Vice Presidential Review – which is the last step in the appeal process. (*Id.* at ¶¶ 63-64) On November 1, 2013, Dr. Scott Walter denied Plaintiff's review. (*Id.* at ¶ 66)

On September 3, 2014, almost one year after his final appeal was denied, Plaintiff filed a Complaint against the University alleging eleven claims for relief: First Claim (breach of contract); Second Claim (intentional infliction of emotional distress); Third Claim (libel per se); Fourth Claim (libel – reckless disregard/malice); Fifth Claim (libel per quod); Sixth Claim (vacatur of the disciplinary decision – arbiter's policy); Seventh Claim (vacatur of the disciplinary decision – arbitrator's misconduct); Eighth Claim (violation of civil rights – 42 U.S.C. § 1983); Ninth Claim (violation of Title IX – erroneous outcome); Tenth Claim (violation of Title IX – deliberate indifference and sexual discrimination); and Eleventh Claim (violation of due process rights). (*Id.* at ¶¶ 95-159)

## III. ARGUMENT

### A. The Eleventh Amendment Requires Dismissal of the Majority of Plaintiff's Claims.

Plaintiff has filed suit against the University asserting eleven claims for relief. (Doc. 1) Plaintiff's first seven claims for relief are state law claims. (*Id.* at ¶¶ 95-137) Plaintiff's Eighth and Eleventh[2] claims for relief assert that the University acted under the color of law and violated Plaintiff's rights under the Fifth[3] and Fourteenth Amendments. (*Id.* at ¶¶ 138-143, 155-159) Lastly, Plaintiff's Ninth and Tenth claims for relief assert two different theories of liability under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–1688. (*Id.* at ¶¶ 144-154).

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

U.S. Const. Amend. XI.

Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted). Miami University is a public university in the state of Ohio. *See* Ohio Rev. Code § 3339.01. "Since a public university

---

[2] Plaintiff's Eleventh Claim purports to assert a stand-alone violation of the Fourteenth Amendment. (Doc. 1 at ¶¶ 155-159). To the extent that it does, that claim must be dismissed. *See Smith v. Michigan Dep't of Corr.*, 765 F. Supp. 2d 973, 981 (E.D. Mich. 2011) ("The Fourteenth Amendment does not contain specific language creating a private right of action, but it is well-settled that the rights created thereunder can be enforced through 42 U.S.C. § 1983.") (citing *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 611 (2008))

[3] Plaintiff's claim against the University cannot rely on the Fifth Amendment. *See Stein v. Kent State Univ. Bd. of Trustees*, 994 F. Supp. 898, 903 (N.D. Ohio 1998), *aff'd, Stein v. Kent State Univ.*, 181 F.3d 103 (6th Cir. 1999) ("The Fifth Amendment does not apply to the states and her claim must rest on the Fourteenth Amendment.")

qualifies as an arm of the state . . . Miami University 'is immune from suit under the Eleventh Amendment because it is well-settled that a plaintiff is precluded from directly suing a State in federal court.'" *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 571 (6th Cir. 2000)).

Eleventh Amendment immunity does not preclude a plaintiff from directly suing a State in federal court where Congress has abrogated the states' sovereign immunity with regard to a particular statute. *See Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 362 (6th Cir. 1998). For example, Congress has abrogated the states' Eleventh Amendment immunity with regard to Title IX. *Id.* The University is not seeking to dismiss Plaintiff's Title IX claims on the basis of Eleventh Amendment immunity. [4]

Neither Congress nor the State of Ohio has abrogated or waived Eleventh Amendment immunity for the remainder of Plaintiff's claims. *See Tincher v. Owsley*, 500 F. App'x 468, 472 (6th Cir. 2012) (finding that district court properly dismissed the plaintiff's due process claims against the university as such claims were barred by the Eleventh Amendment); *McCormick*, 693 F.3d at 664 ("Congress has not abrogated the Eleventh Amendment for state law claims . . . nor has Ohio waived sovereign immunity.") (citation omitted).

Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh claims for relief against the University must be dismissed as the University is immune from those claims pursuant to the Eleventh Amendment.

---

[4] Plaintiff's Title IX Claims will be addressed below.

### B. Plaintiff's Sixth and Seventh Claims Are Inapplicable and Untimely.

The Sixth and Seventh Claims pled in Plaintiff's Complaint ask this Court to vacate the "arbitrator's" decision, pursuant to O.R.C. § 2711.10 and 9 U.S.C. § 10(a). (Doc. 1 at ¶¶ 131, 135) In addition to being prohibited by Eleventh Amendment immunity, these claims should be dismissed as they are wholly inapplicable to the facts of the current case. Further, these claims are untimely because O.R.C. § 2711.13 and 9 U.S.C. § 12 require any motion to vacate the arbitrator's decision be filed within three months of that decision.

The statutes relied upon by Plaintiff in seeking relief do not define "arbitration." However, Ohio courts have stated: "Arbitration occurs when disputing parties contractually agree to resolve their conflict by submitting it to a neutral third party for resolution." *Schaefer v. Allstate Ins. Co.*, 63 Ohio St. 3d 708, 712 (1992). Additionally, "[t]he preeminent concern of Congress in passing the [Federal Arbitration Act] was to enforce private agreements into which parties had entered, and that concern requires that [the federal courts] rigorously enforce agreements to arbitrate . . . ." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985). "Arbitration under the FAA is contract-driven and principally a matter of consent." *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 717 (6th Cir. 2014) (citation omitted).

The disciplinary process at the University, as set forth in the Student Handbook, is not an attempt by disputing parties to reach a resolution through a third party. (*See* Complaint at ¶ 29) Further, there is no express agreement between the parties to this

action to arbitrate and the University's Student Handbook in no way implicates the statutes relied upon by Plaintiff.

The process allows the University to determine, through a fair hearing, whether disciplinary action is warranted. The University's Student Handbook, which explains in detail the hearing purpose and process, does not contemplate the application of the Ohio or Federal statutory arbitration schemes. Indeed, the University's disciplinary process is very different from an arbitration. For example, O.R.C. 2711.06 and 9 U.S.C. § 7 provide the arbitrator with the power to compel witnesses' attendance at the hearing; there is no indication that the members of the University's disciplinary board have the power to compel the attendance of witnesses. The process, contained entirely within the University and governed solely by provisions of the Student Handbook, is not an arbitration within the meaning of those laws, and O.R.C. § 2711.10 and 9 U.S.C. § 10(a) do not apply to it.

Even assuming *arguendo* that the hearing process could be considered an "arbitration," Plaintiff's claims are untimely. O.R.C. § 2711.13 provides:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is delivered to the parties in interest, as prescribed by law for service of notice of a motion in an action.

"R.C. 2711.13 provides a three month period within which a party must file a motion to vacate, modify, or correct an arbitration award under R.C. 2711.10 or R.C. 2711.11." *City of Galion v. American Fed'n of State, County & Mun. Employees, Local No. 2243*, 71 Ohio St. 3d 620, 622 (1995). "If an application is filed after this period, the trial court lacks jurisdiction." *Id.*

Additionally, 9 U.S.C. § 12 states, "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." "The FAA allows only three months within which to mount a judicial challenge to an arbitration award that is subject to 9 U.S.C. § 12." *Federated Rural Elec. Ins. Exch. v. Nationwide Mut. Ins. Co.*, 134 F. Supp. 2d 923, 932 (S.D. Ohio 2001).

According to Plaintiff's Complaint, the University denied Plaintiff's final appeal in the disciplinary process on or about November 1, 2013. (Doc. 1 at ¶ 66). Plaintiff filed his Complaint in this Court on September 3, 2014. (*See* Doc. 1). Plaintiff did not seek to vacate the "arbitration award" within the three month time period required under O.R.C. § 2711.13 or 9 U.S.C. § 12.

Plaintiff's Sixth and Seventh claims for relief should be dismissed as they are wholly inapplicable to this situation, and, even if they did apply, they are untimely.

### C. Plaintiff's Ninth and Tenth Claims for Relief Fail to State Claims to Relief That are Plausible on Their Face.

Plaintiff's Ninth and Tenth claims for relief are brought under different theories of liability under Title IX – an erroneous outcome theory and a deliberate indifference theory. (Doc. 1 at ¶¶ 144-154) Because Plaintiff's Complaint does not contain sufficient factual allegations to state a claim under Title IX, his Ninth and Tenth claims for relief should be dismissed.

Title IX is a federal statute designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding. 20 U.S.C. § 1681. The statute provides:

> No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or

> be subjected to discrimination under any educational program or activity receiving Federal financial assistance . . .

20 U.S.C. § 1681(a) (emphasis added).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

**1. Plaintiff's lack of evidence relating to gender-bias is fatal to his Title IX "erroneous outcome" claim.**

"Under the 'erroneous outcome' or 'selective enforcement' standards, a plaintiff must demonstrate that the conduct of the university in question was motivated by a sexual bias." *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (citing *Mallory v. Ohio Univ.*, 76 F. App'x. 634, 638 (6th Cir. 2003)). Mere "[a]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). That is exactly what Plaintiff has done here. Plaintiff merely describes what he believes to be a "flawed proceeding" and asks the Court to accept that it must have been caused by gender animus. Plaintiff has pled absolutely nothing which establishes a causal connection between an allegedly "flawed proceeding" and gender animus.

As the Second Circuit stated in *Yusuf* — the seminal case regarding this cause of action — "[a]llegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases." 35 F.3d at

715. "Such allegations might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* Plaintiff's Complaint is void of any comments made by University officials which in any way relate to a gender bias. Additionally, Plaintiff has not alleged anything which could establish that the University has engaged in a pattern of decision-making that could tend to show the influence of gender on his disciplinary proceeding.

Undoubtedly, Plaintiff will rely upon Judge Spiegel's decision in *Wells v. Xavier Univ.*, --- F. Supp. 2d ----, 2014 WL 972172 (S.D. Ohio Mar. 11, 2014), in an attempt to claim that he has sufficiently pled a Title IX claim. However, the key facts present in *Wells* are not present here. In *Wells*, the plaintiff alleged that "the allegations against him came within the context of Xavier's recent mishandling of sexual assault allegations that triggered an investigation in January 2012 by the United States Department of Education's Office of Civil Rights ("OCR")." *Id.* at *1. The plaintiff alleged that Xavier was "reacting against him, as a male, to demonstrate to the OCR that [Xavier] would take action, as they had failed to in the past, against males accused of sexual assault." *Id.* at *5. Judge Spiegel agreed, finding that this fact combined with allegations that Xavier rushed to judgment, ignored advice from the county prosecutor, denied the plaintiff counsel, and denied the plaintiff witnesses were sufficient to plead a Title IX claim.

Here, unlike *Wells*, there is no allegation that the University had an OCR investigation motivating it to engage in a disciplinary proceeding biased against males. The one fact in *Wells* that could be construed to support a gender bias — the motivation of an OCR investigation — is not present here. Rather, as stated above, Plaintiff has

merely alleged that the University engaged in a "flawed proceeding" and then states in conclusory fashion that this allegedly flawed proceeding was the result of gender bias.

Plaintiff's allegations are more akin to those seen in the Eastern District of Tennessee's decision in *Doe v. University of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009). In *Doe*, the plaintiff was accused by a female student of sexual assault. *Id.* at 751. Before the disciplinary hearing, a staff member met with the plaintiff and advised him that the university had gathered all the relevant information and would provide the witnesses; the plaintiff would only be able to bring character witnesses to the hearing; and the plaintiff needed to provide a written statement of his defense as soon as possible. *Id.* at 753-54.

At the hearing in *Doe*, the plaintiff was only allowed to be present when he was testifying or being questioned and none of the disciplinary panel members had relevant experience in adjudicating alleged sexual assaults. *Id.* at 754. After the hearing, the plaintiff was found responsible for the sexual assault and his appeals were eventually denied. *Id.* at 751, 755.

Thereafter, the plaintiff in *Doe* filed suit alleging, *inter alia*, a claim under Title IX against the defendant university. *Id.* at 755. The defendant university filed a motion to dismiss, asserting that the plaintiff failed to state a claim under Title IX. *Id.* At the outset of its discussion, the *Doe* court noted that it was not tasked with making "an independent determination as to what happened between the Plaintiff John Doe and the Complainant on August 30, 2008."[5] *Id.* Ultimately, after reviewing the plaintiff's allegations, the *Doe* court dismissed the plaintiff's Title IX claim because the plaintiff

[5] Here, the vast majority of Plaintiff's Complaint is dedicated to allegations regarding what occurred between Plaintiff and A.P. in the late hours of August 31, 2013. As in *Doe*, that determination is not before the Court.

failed to allege facts showing that the defendant university's actions "were motivated by sexual bias or that the University's disciplinary hearing process constitutes a 'pattern of decision-making' whereby the University's disciplinary procedures governing sexual assault claims is 'discriminatorily applied or motivated by a chauvinistic view of the sexes.'" *Id.* at 756 (quoting *Mallory*, 76 F. App'x at 638).

Similar to *Doe*, the mere fact that Plaintiff is a male who alleges he was found responsible for sexual assault in a flawed proceeding is insufficient to establish a cause of action under Title IX. As the Second Circuit stated in *Yusuf* , "[a]llegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases." 35 F.3d at 715. If a plaintiff alleging gender discrimination under Title VII alleged that he was terminated from his employment for a flawed reason — and nothing else — those allegations would be insufficient to plead a cause of action under Title VII. At a minimum, a Title VII plaintiff is required to plead some direct evidence of discrimination (i.e. gender-biased comments or animus) or some circumstantial evidence of discrimination (i.e. replaced by a person of a different gender or a similarly-situated person of a different gender was treated better). *See Mann v. Navicor Grp., LLC*, 488 F. App'x 994, 998 (6th Cir. 2012) ("Absent direct evidence, [the plaintiff] must demonstrate a prima facie case of gender discrimination through circumstantial evidence.")

Plaintiff has offered absolutely no allegations of direct or circumstantial evidence indicating that his gender played any role in this situation. Without evidence of gender bias, Title IX cannot be the appropriate vehicle for Plaintiff to challenge the outcome of his disciplinary hearing. *See Hall v. Lee Coll., Inc.*, 932 F. Supp. 1027, 1033 (E.D. Tenn. 1996) (dismissing the plaintiff's Title IX claim against the defendant college where the

plaintiff offered no direct or circumstantial evidence that her suspension was as a result of her gender). As such, Plaintiff's Title IX "erroneous outcome" claim should be dismissed.

**2. Plaintiff cannot maintain a Title IX "deliberate indifference" claim where there is no allegation that he was sexually harassed.**

Plaintiff also asserts that the University is liable under a Title IX "deliberate indifference" theory. (Doc. 1 at ¶¶ 150-154) "The 'deliberate indifference' standard is applied where a plaintiff seeks to hold an institution *liable for sexual harassment and* requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory*, 76 F. App'x at 638 (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 277 (1998) (emphasis added). "The 'deliberate indifference' must, at a minimum, *cause students to undergo harassment* or make them liable or vulnerable to it." *Doe v. Univ. of the South*, 687 F. Supp. 2d at 757 (citing *Patterson v. Hudson Area Schs.,* 551 F.3d 438, 446 (6th Cir. 2009) (emphasis added). While sexual violence is a form of sexual harassment under Title IX, Plaintiff's complaint makes no allegation that he was a victim of sexual violence or was otherwise harassed. Therefore, his Title IX deliberate indifference claim must be dismissed.

Once again, Plaintiff will likely rely on *Wells v. Xavier Univ.*, in an attempt to salvage his Title IX deliberate indifference claim. Citing to *Mallory*, the Court in *Wells* stated that a claim based on deliberate indifference requires a plaintiff to "show that an official of the institution who had the authority to institute corrective measures had actual notice of and failed to correct the misconduct, in this case the alleged defective hearing." 2014 WL 972172 at *5. However, the Court in *Wells* ignored the Sixth

Circuit's statement in *Mallory* that "[t]he 'deliberate indifference' standard is applied where a plaintiff seeks to hold an institution *liable for sexual harassment* . . . ." 76 F. App'x at 638. Additionally, the Sixth Circuit in *Mallory* did not, in fact, adopt the deliberate indifference standard. *Id*. at 639. Rather, the Sixth Circuit merely *assumed arguendo* that the deliberate indifference standard applied and affirmed a grant of summary judgment for the defendant university where there was no genuine dispute of material fact whether the university's actions were motivated by the disciplined student's sex. *Id*. Interestingly, the Court in *Wells* acknowledged in a footnote that the "classic case of Title IX deliberate indifference relates to sexual harassment." 2014 WL 972172 at *5, n.2.

Here, Plaintiff does not allege that he was sexually harassed or that any University official was deliberately indifferent to sexual harassment against him. Plaintiff cannot proceed on a deliberate indifference theory where there is no allegation that he was sexually harassed. The "deliberate indifference" theory is operative only if a plaintiff is asserting that he was subjected to sexual harassment and that officials at the defendant institution acted deliberately indifferent to the known sexual harassment. Because Plaintiff makes no allegations that he was sexually harassed, he cannot proceed under a deliberate indifference theory.

Nonetheless, even if the Court were to allow Plaintiff to proceed on a deliberate indifference theory without any allegation of sexual harassment, such claim should still be dismissed as Plaintiff has not alleged any facts which could establish that any of the University's actions were caused by Plaintiff's gender.

## IV. CONCLUSION

For each and all of the foregoing reasons, the University respectfully requests that this Court dismiss all claims alleged against it pursuant to Federal Rule of Civil Procedure 12.

Respectfully submitted,

MICHAEL DEWINE, ATTORNEY GENERAL OF OHIO

By: /s/ Doreen Canton

Doreen Canton (0040394)
Evan T. Priestle (0089889)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Tel: 513.381.2838
Fax: 513.381.0205
canton@taftlaw.com
epriestle@taftlaw.com

Trial Attorneys for Defendant Miami University

Of Counsel:

Robin Parker (0010854)
General Counsel
Miami University
215 Roudebush Hall
Oxford, OH 45056

CERTIFICATE OF SERVICE

I certify that on September 26, 2014, I filed Defendant Miami University's Motion to Dismiss Plaintiff's Complaint with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all registered parties.

/s/ Doreen Canton