IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Matthew Sahm, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:14-cv-698 |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Miami University, | : | Order Granting Motion to Dismiss |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16).

Plaintiff Matthew Sahm filed this suit against Defendant Miami University after the University expelled him for a violation of the University's Code of Student Conduct. Miami University moved for dismissal. In an Order dated January 7, 2015, the Court dismissed with prejudice nine of Sahm's eleven claims for failure to state a claim upon which relief could be granted. (Doc. 14 at PageID 126.) The Court determined that the remaining two claims, both asserting Title IX violations, also were legally deficient. (*Id.* at PageID 121–26.) However, the Court granted Sahm leave to amend the Title IX claims to incorporate allegations based on extrinsic evidence which he purported would be sufficient to establish that Miami University was motivated by gender bias. (Doc. 14 at PageID 124–26.)

On January 30, 2015, Sahm timely filed an Amended Complaint (Doc. 15) reasserting two Title IX claims. Miami University now has moved to dismiss the Amended Complaint. The matter is fully briefed and ripe for resolution. For the reasons that follow, the Court will GRANT the Motion to Dismiss.

**I.     BACKGROUND**

A.P., a female student at Miami University, accused Sahm of sexually assaulting her on the night of August 31, 2013.  (Doc. 15 at PageID 127, 129.)  Sahm denies that he sexually assaulted A.P.  (*Id.*)  Miami University conducted disciplinary proceedings against Sahm regarding the sexual assault charge, but Sahm alleges that the proceedings were conducted in an unfair manner.  (*Id.* at PageID 127, 133–37.)  Miami University determined to expel Sahm and upheld the decision upon two levels of appeals.  (*Id.* at PageID 135–37.)

Sahm alleges new facts in the Amended Complaint intended to be sufficient to establish that Miami University discriminated against him on the basis of his gender during the disciplinary proceedings.  Several of the new allegations concern the conduct of Susan Tobergte, a part-time member of the University's Police Department and a member of its Task Force on the Prevention of Sexual Assault.  (Doc. 15 at PageID 133; Doc. 20-1 at PageID 247.)  Sahm alleges that Tobergte served as the University's Title IX investigator and conducted the investigation into Sahm's alleged assault of A.P.  (Doc. 15 at PageID 133.)  Tobergte interviewed Sahm and A.T., A.P.'s sorority sister, about the incident.  (*Id.* at PageID 133, 138.)  Tobergte did not disclose her positions with the Police Department or on the Task Force to Sahm or A.T.  (*Id.* at PageID 133, 138.)  Tobergte discouraged A.T. from testifying at Sahm's disciplinary hearing and she told A.T. to "Google" facts and statistics about campus sexual assaults.  (*Id.* at PageID 138, 145.)  Tobergte later offered opinion testimony to the Disciplinary Board which conducted Sahm's disciplinary hearing.  Tobergte did not disclose her role as a member of the Task Force to the Disciplinary Board.  (*Id.* at PageID 133–34.)  Sahm alleges that Tobergte was biased in her investigation of Sahm and in her testimony at the disciplinary hearing based on her position as a Task Force member.  (*Id.* at PageID 145.)

Sahm also makes a series of allegations regarding what he describes as "a history of problems on how the University has dealt with sexual assault allegations on campus, resulting in law suits and bad publicity." (*Id.* at PageID 141.)  The Court will set out these allegations in roughly chronological order.  To begin, a *Cincinnati Enquirer* article dated February 1, 2003 reported that four female students at the University reported separate sexual assaults occurring off-campus during one weekend in January 2003.  (Doc. 15 at PageID 141; Doc. 20-1 at PageID 214.)  The suspects in each assault were also Miami University students.  (Doc. 20-1 at PageID 214.)  The article also discussed a sexual assault awareness program the University held during freshman orientation weekend with information specifically for male students.  (*Id.*)

Around 2006, Miami University created a strategic planning group created to improve the way the University addressed sexual assault prevention, intervention, and support.  (Doc. 15 at PageID 141; Doc. 20-1 at PageID 218–19.)  The University's Sexual Assault Task Group issued a written report in 2006.  (Doc. 20-1 at PageID 250–86.)  The 2006 Report stated that the student culture at the University "encourages heterosexual gender roles of male entitlement and conquest" and that sexual aggression was one of the largest issues facing its female students.  (Doc. 20-1 at PageID 258, 269, 271.)  The Report also recognized that the University had not kept up with best practices and that it needed to train its disciplinary board members regarding sexual assault.  (*Id.* at PageID 253, 284.)

Seven sexual assaults were reported to the campus police in 2008.  (Doc. 15 at PageID 142; Doc. 20-1 at PageID 222.)  One media report stated that Miami University reported twenty-seven sexual assaults between 2009 and 2011.  (Doc. 20-1 at PageID 226–27.)

An article from the *Dayton Daily News* dated February 19, 2010 discussed incidents in which three women reported separate incidents of rape or sexual assault over the course of three

3

weeks.  (Doc. 15 at PageID 142; Doc. 20-1 at PageID 222–23.)  The article also discussed the police department's statement that alcohol was a factor in most crimes at the University, and the article discussed the University's efforts to raise awareness about sexual assaults.  (Doc. 20-1 at PageID 222–23.)

An article in the *Huffington Post* first issued on October 24, 2012 and then updated on December 24, 2012, discussed a disturbing incident in which a flyer entitled "Top Ten Ways to Get Away with Rape" was found in a men's restroom in a coed dormitory at Miami University.  (Doc. 15 at PageID 142; Doc. 20-1 at PageID 226–27.)  The author of the article criticized the University's response to the incident.  (Doc. 20-1 at PageID 226–27.)  She criticized the University for not keeping its sexual assault and prevention website up to date and for allowing the position of sexual assault prevention coordinator to remain vacant for more than one year.  (*Id.*)  However, the author did acknowledge that the University disciplined the students who had posted the flyer and held a mandatory education session for the male students living in that dormitory.  (*Id.*)

Four media articles published in the months of October and November 2013 discussed a lawsuit filed against Miami University in Butler County, Ohio by a female student who alleged she was raped by a male student in 2011.  (Doc. 15 at PageID 143; Doc. 20-1 at PageID 230–42.)  A search of the Butler County Clerk of Courts website reveals the case to be *Mirlisena v. Miami University, Inc.*, No. CV 2013 10 2933 (Butler Cty. C.P.).  The female student asserted claims against Miami University for negligence and breach of the student code of conduct.  (Doc. 20-1 at PageID 230–32.)  She alleged that the University should have expelled the male student prior to 2011 because he previously had been investigated by the University for multiple instances of

4

lewd sexual behavior including videotaping sexual encounters. (Doc. 20-1 at PageID 230–32, 234.)

Finally, a *CityBeat* article dated November 20, 2013 criticized the University for allowing the position of sexual assault response coordinator to remain vacant for approximately one year before filling it in April 2013. (*Id.* at PageID 232.)

## II. STANDARDS GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

Sahm alleges that the University violated Title IX in the way it conducted the disciplinary proceedings against him which led to his dismissal. Title IX of the Education Amendments of 1972 provides generally that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Sahm asserts claims for Title IX under two separate theories of relief, erroneous outcome and deliberate indifference. (Doc. 15 at PageID 144–46.) In a typical erroneous outcome case, the plaintiff "attack[s the] university disciplinary proceeding on grounds of gender bias" by arguing that the plaintiff "was innocent and wrongly found to have committed an offense." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). In a deliberate indifference case, "a plaintiff seeks to hold an institution liable for sexual harassment and . . . [is required to] demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003).[1]

---

[1] The parameters for a Title IX claim based on deliberate indifference are unsettled within the Sixth Circuit. At least one district court in the Sixth Circuit has held that the sexual harassment is a "critical component" of a Title IX deliberate indifference claim. *See Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 757–58 (E.D. Tenn. 2009). A sister court in the Southern District of Ohio refused to adopt the reasoning of *University of the South*. *See Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751–52 (S.D. Ohio 2014). The *Wells* court recognized that sexual harassment is the "classic case of Title IX deliberate indifference[,]" but it did not limit the deliberate indifference theory to only sexual harassment cases. *Id.* at 751 n.2. The *Wells* court stated that a plaintiff asserting a claim for deliberate indifference under Title IX "must ultimately show that an official of the institution who had the authority to institute corrective measures had actual notice of and failed to correct the misconduct, in this case the alleged defective hearing." 7 F. Supp. 3d at 751. This Court has not determined whether to recognize a Title IX claim for deliberate indifference outside the context of sexual harassment. The Court need not make the determination in this case because the claim fails for a different reason as set forth in the primary text.

6

Miami University moves to dismiss the Title IX claims arguing that Sahm's allegations are insufficient to raise an inference of gender bias. A plaintiff must prove gender bias against the defendant under either theory of Title IX. *See* 20 U.S.C. § 1681(a) (prohibiting discrimination "on the basis of sex"). For example, a plaintiff bringing an erroneous outcome claim must plead two elements: (1) facts sufficient to cast doubt as to the accuracy of the outcome of the disciplinary proceeding and (2) a causal connection between the flawed outcome and gender bias. *Yusuf*, 35 F.3d at 715. The allegations of causation sufficient to state a Title IX claim can be similar to those sufficient to state a Title VII discrimination claim, such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.*; *see also Mallory*, 76 F. App'x at 640 (adopting the *Yusuf* standard).

The factual allegations in the Amended Complaint do not satisfy any of these traditional means of demonstrating gender bias. First, Sahm has not alleged that any members of the disciplinary tribunal made statements indicating gender bias. Second, the allegations regarding Susan Tobergte, the Title IX investigator for the charges against Sahm, are not sufficient to establish gender bias even if true. The thrust of the allegations against Tobergte appears to be that her multiple roles as a part-time police officer, a member of the Task Force on the Prevention of Sexual Assault, and a Title IX investigator made her biased against Sahm during her investigation of the alleged assault of A.P. The factual assertion that she discouraged a witness from testifying at the disciplinary hearing is troubling. However, these facts pleaded against Tobergte do not suggest a gender bias against males so much as against students accused of sexual assault.

7

Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students. *See Bleiler v. College of Holy Cross*, No. 11-11541-DJC, 2013 WL 4714340, at *12 (D. Mass. Aug. 26, 2013), *appeal filed*, No. 13-2245 (1st Cir.); *see also King v. DePauw Univ.*, No. 2:14-cv-70-WTL-DKL, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014) (demonstrating a bias against students accused of sexual assault is not the equivalent of demonstrating a bias against males, even if all of the students accused of assault were male); *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996) (stating that "a bias against people accused of sexual harassment and in favor of victims . . . indicate[s] nothing about gender discrimination"). Sahm asserts no facts to suggest that Tobergte would have treated a female accused of sexual assault any differently in her investigation or that the University would have acted differently in a disciplinary procedure against a female accused of sexual assault. Additionally, the Court will not find fault from the fact that the University's Title IX investigator testified at the disciplinary hearing. *See Xiaolu Peter Yu v. Vassar Coll.*, No. 13-CV-4373 (RA), --- F. Supp. 3d ---, 2015 WL 1499408, at *14 (S.D.N.Y. Mar. 31, 2015) (finding no Title IX violation from the fact that the university's Title IX investigator testified at the disciplinary hearing).

Third, Sahm has not established a pattern of biased decision making by the University. The Sixth Circuit has noted that "one case by an individual who was subjectively dissatisfied with the result [of a disciplinary proceeding] does not constitute a pattern of decisionmaking." *Mallory*, 76 F. App'x at 640 (internal quotation omitted); *see also Sterrett v. Cowan*, No. 14-cv-11619, 2015 WL 470601, at *16 (E.D. Mich. Feb. 4, 2015) (refusing to allow the plaintiff to amend his complaint to add a Title IX claim where he failed to identify any female student, other

than the complainant, who was treated more favorably than he was treated), *appeal filed*, No. 15-1121 (6th Cir.).

In addition, the Court agrees with Miami University that this case is materially distinguishable from a recent case against Xavier University in which the district court refused to dismiss an erroneous outcome Title IX claim. *See Wells v. Xavier Univ.*, 7 F. Supp. 3d 746 (S.D. Ohio 2014). In *Wells*, the plaintiff alleged that he was falsely accused of sexual assault against a female student by Xavier and that he was wrongly expelled after a flawed disciplinary proceeding. *Id.* at 747–48. He alleged that the charges against him and the disciplinary hearing arose in a context of an investigation conducted by the U.S. Department of Education's Office of Civil Rights ("OCR") regarding how Xavier handled previous sexual assault allegations. *Id.* at 747. He alleged that Xavier "made him into a scapegoat" to demonstrate to the OCR that it would respond better to sexual assault allegations. *Id.* The district court agreed with the plaintiff's argument that his allegations were sufficient to state an erroneous outcome Title IX claim insofar as he alleged that Xavier had "react[ed] against him, as a male, to demonstrate to the OCR that [Xavier] would take action, as [it] had failed to in the past, against males accused of sexual assault." *Id.* at 751.

Sahm's evidence is materially different. Media accounts about prior incidents of alleged sexual assault which occurred between 2003 and 2011 do not demonstrate gender bias on the part of the University. The prior incidents are too remote in time to be even circumstantial evidence in this case absent specific allegations which would connect the incidents to the University's disciplinary proceedings against Sahm. *Cf. Worthy v. Mich. Bell Tele. Co.*, 472 F. App'x 342, 347 (6th Cir. 2012) (calling purported discriminatory comment made two and one-half years earlier to be "remote in time"); *Myers v. Cuyahoga Cty., Ohio*, 182 F. App'x 510, 512,

520 (6th Cir. 2006) (stating that a slur made at least one year before performance problems arose and at least three years prior to termination was not evidence of discrimination).

The media reports concerning *Mirlisena v. Miami University, Inc.*, No. CV 2013 10 2933 (Butler Cty. C.P.)—the lawsuit filed against the University for failing to expel a male student accused of sexual misconduct—do not give rise to an inference gender bias for a different reason. The relevant events in this case precede the media coverage of *Mirlisena*. The University held the disciplinary hearing for Sahm in September 2013, denied his initial appeal on October 18, 2013, and denied his final appeal on November 1, 2013. (Doc. 15 at PageID 133, 136–37; Doc. 20-1 at PageID 195, 197–98.) The *Mirlisena* case was not filed in the common pleas court until October 24, 2013. *See* Docket, No. CV 2013 10 2933 (Butler Cty., Ohio C.P.) The media articles discussing the lawsuit were not published until November 2013. (Doc. 20-1 at PageID 230, 234, 237, 241.) On the bare facts alleged, the negative media attention generated by the lawsuit cannot be said to have influenced disciplinary proceedings which concluded before the media reports were published.

The 2006 Sexual Assault Report also is not relevant evidence of gender bias. Sahm pleads no facts demonstrating a connection between the creation of a Sexual Assault Task Group in 2006 and the manner in which his sexual assault charge was adjudicated seven years later in 2013. The comments in the report regarding a culture of male entitlement and sexual aggression are remote in time from the Sahm incident. Moreover, only two current members of the fourteen-member Task Force for the Prevention of Sexual Assault, Dr. Sally Lloyd and Dr. John Ward, were members of the Sexual Assault Task Group who worked on the report in 2006. (Doc. 20-1 at PageID 247, 269.) Neither the Task Force itself, nor Dr. Lloyd nor Dr. Ward, are alleged to have played in role in Sahm's disciplinary proceedings.

In sum, the Court concludes that the allegations put forward do not raise an inference of gender bias on the part of Miami University when examined in context. Sahm has failed to state a claim for violation of Title IX upon which relief can be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant Miami University's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 16).

IT IS SO ORDERED.

                                          S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court